UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HARALSON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. AVIATION SERVICES CORP.,<br><br>Defendant. | Case No. 16-cv-05207-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Re: ECF No. 73 |

Before the Court is Plaintiff's motion for preliminary approval of a class action settlement and preliminary certification of a settlement class. ECF No. 73. The Court will deny the motion without prejudice.

I.  **BACKGROUND**

A.  **The Parties and Claims**

In this wage-and-hour putative class action, Plaintiff James Haralson alleges violations of the California Labor Code against Defendant U.S. Aviation Services Corp. ("USAS"). Third Amended Complaint ("TAC"), ECF No. 31. The factual basis for Plaintiff's claims is set forth more fully in the Court's December 12, 2016 order granting in part a motion to dismiss in a subsequently consolidated case, *Haralson v. United Airlines*, No. 16-cv-05226-JST (N.D. Cal.), ECF No. 30. In brief, Plaintiff alleges that USAS failed to provide him and similarly situated employees with meal periods and rest periods, or pay premium wages for those unprovided breaks. TAC ¶ 1. Further, Plaintiff contends that USAS had impermissible policies or practices of automatically deducting time for meal period breaks, *id.* ¶¶ 77-78, and requiring employees to work after clocking out or reducing their recorded hours, *id.* ¶ 82. Plaintiff also alleges that USAS provided inaccurate wage statements as a result of failing to account for these hours worked and

wages earned. *Id.* ¶¶ 89-99.

Finally, Plaintiff brings derivative claims based on those same Labor Code violations under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and for civil penalties under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699. *Id.* ¶¶ 120-126.

### B.  Procedural Background

On August 9, 2016, Plaintiff filed this action against USAS and United Airlines, Inc. in California state court. ECF No. 1 ¶ 1. Both Defendants removed to federal court. ECF No. 1; *Haralson v. United Airlines, Inc.*, No. 16-cv-05226-JST (N.D. Cal.), ECF No. 1. On December 12, 2016, the Court granted in part and denied in part United Airlines' motion to dismiss, in which USAS had joined. *United Airlines*, No. 16-cv-05226-JST (N.D. Cal.), ECF No. 30.

After Plaintiff filed the operative TAC, *USAS*, No. 16-cv-05207-JST (N.D. Cal.), ECF No. 31, the Court consolidated the two cases, ECF No. 35. Plaintiff later agreed to dismiss United Airlines from the case without prejudice. ECF No. 51.

The parties mediated this matter before professional mediator Mark Rudy on February 7, 2018 in San Francisco, California, but did not settle at that time. ECF No. 74 ¶ 7

On May 4, 2018, Plaintiff filed a motion for class certification, which USAS opposed. ECF Nos. 62, 64, 67. On October 24, 2018, before the Court took the motion under submission, Plaintiff filed a notice of a settlement in principle and withdrew the motion. ECF No. 68.

On January 8, 2019, Plaintiff filed this unopposed motion for preliminary settlement approval and preliminary settlement class certification. ECF No. 73.

### C.  Terms of the Settlement Agreement

The proposed settlement agreement ("Settlement") resolves claims between USAS and the settlement class, defined as follows: "All current and former non-exempt airplane cabin cleaners who performed services for USAS in California during the Class Period." ECF No. 74-1 at 10.[1]

Under the Settlement, USAS agrees to pay $880,000 (the "Settlement Amount") to the

---

[1] Under the Settlement, the Class Period runs "from August 9, 2012 through the date of Preliminary Approval." ECF No. 74-1 at 11.

settlement administrator, which will ultimately be distributed to the Class. *Id.* at 17-18. The following amounts will be deducted from the Settlement Amount: (1) attorneys' fees and expenses; (2) a service award to Plaintiff; (3) settlement administration costs; and (4) taxes. *Id.* at 17. The Settlement permits Plaintiff's counsel to seek one-third of the Settlement Amount, or $293,333.33 in attorneys' fees,[2] $15,000 in litigation costs, and a $7,500 service award. *Id.* Further, the Settlement limits administrative costs to $20,000, and estimates $25,000 in employer taxes. *Id.* at 17-18.

The Settlement also allocates $25,000 to PAGA penalties, of which $18,750 will paid to the California Labor Workforce Development Agency, ECF No. 74-1 at 17, as required by statute, Cal. Lab. Code § 2699(i).

The remaining Settlement Amount will be allocated to each class member according to the number of weeks he or she worked during the Class Period. ECF No. 73 at 17; ECF No. 74-1 at 18. Assuming none of the approximately 630 class members opts out of the Settlement, each class member will receive a gross amount of approximately $1,400 prior to deducting the above fees and costs. ECF No. 73 at 17.

In exchange, the class members will release all Covered Claims:

> [A]ny and all federal (including under the Fair Labor Standards Act ("FLSA") if the Class Member submits a Claim Form), state, local and common law claims for unpaid wages and overtime compensation (including but not limited to any claims based on working "off-the-clock"), unpaid minimum wages (including but not limited to any claims based on arriving at or departing from work or passing through airport security), unpaid rest breaks, unpaid meal periods, waiting time penalties, statutory penalties (including but not limited to penalties based on alleged wage statement and/or payroll record violations), any and all civil penalties under PAGA based on any claims related to the Class Action, and any alleged violation of any wage and hour, wage payment, wage deduction, meal and rest break, recordkeeping, unfair business practice or any other wage-related statutes, laws or regulations that are or could be asserted by any Class Member arising out of the acts alleged in the TAC or arising

---

[2] The Court notes that the Settlement states that it limits attorneys' fees to "up to twenty-five percent (33 1/3% or $293,333.33)." ECF No. 74-1 at 17. It also states that counsel will seek "an award of attorneys' fees not to exceed $293,333.33 of the Gross Settlement Amount, which represents twenty-five percent." *Id.* at 30. The Court presumes the more frequently used $293,333.33 number reflects the parties' intent, regardless of the percentage that figure actually represents. However, the parties may wish to clarify any ambiguity in revising the Settlement.

out of the facts, matters, transactions or occurrences set forth in the TAC.

ECF No. 74-1 at 11-12. The release "specifically exclude[s] . . . claims that cannot be waived as a matter of law, including claims for workers' compensation and unemployment insurance benefits." *Id.* at 12.

The release applies to all Covered Claims against USAS and United Airlines, and their associated entities. *Id.* at 20. In order for a class member's release of FLSA claims to be effective, the class member must both submit a claim form and cash a settlement check. *Id.* at 11, 20-21, 45.

In order to inform class members of the Settlement, Plaintiff proposes the following notice plan. Within 14 days of preliminary approval, USAS will provide the Settlement Administrator with a confidential class list of names and contact information, as well as the dates of employment and qualifying workweeks for each class member. *Id.* at 21-22. The Settlement Administrator will mail notice of the Settlement and a Claim Form to class members within another 14 days. *Id.* at 22. The Settlement Administrator will also perform address verification and skip tracing in a further attempt to locate other class members. *Id.* at 22-23.

Class members will have 60 days from the mailing deadline to opt out of the Settlement or object to its terms, and for class members participating in the Settlement, to submit a Claim Form (the "Notice Period"). *Id.* at 23. Thirty days after the original mailing, the Settlement Administrator will mail a Reminder Notice to all class members who have not yet responded. *Id.* at 24. If any class members submit a deficient Claim Form, the Settlement Administrator will notify them of the deficiency and provide an opportunity to correct it. *Id.*

In the event that more than ten percent of class members opt out of the Settlement, their claim shares will be subtracted from the total Settlement Amount. *Id.* at 28. If more than 60 class members opt out, USAS will have the unilateral right to terminate the Settlement. *Id.*

## II.   JURISDICTION

This Court has jurisdiction of this action under the Class Action Fairness Act ("CAFA") because the amount in controversy exceeds $5,000,000, there is minimal diversity, and the number

of class members exceeds 100.  28 U.S.C. § 1332(d)(2).[3]

## III.  LEGAL STANDARD

### A.  Class Certification

Class certification under Federal Rule of Civil Procedure 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b).  Plaintiff relies on Rule 23(b)(3) and must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated,to adjust the class, informed by the proceedings as they unfold." *Id.*

### B.  Preliminary Settlement Approval

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Rule 23 requires courts to employ a two-step process in evaluating a class action settlement.  First, the parties must

---

[3] The Court notes that the TAC states Plaintiff's view that the amount-in-controversy is less than $5 million.  TAC ¶ 2.  But because Plaintiff never actually challenged USAS's assertion that the amount-in-controversy was met, USAS was required to "include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  Based on the current record, the Court concludes that this allegation is plausible, particularly given that Plaintiff's motion for preliminary approval calculates USAS's "unreduced estimated exposure [as] approximately $5,500,000."  ECF No. 73 at 17.

5

show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise;

6

the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted).[4]  The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness.  *Id.*  Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety."  *Id.* (citation omitted).

## IV. DISCUSSION

While some of the above factors lend support for finding that the Settlement falls within the range of possible approval, there are a number of obvious deficiencies that prevent the Court from granting preliminary approval at this time.[5]

### 1. Release of FLSA Claims

The Court observes several problems with the Settlement's release of FLSA claims.  *See* ECF No. 74-1 at 11-12, 20-21.

First, at no point has Plaintiff pleaded or otherwise attempted to pursue an FLSA claim in this action.  *Cf.* ECF No. 1-1; ECF No. 28; TAC.  As a general rule, the Court disfavors settlement release provisions that go "beyond the scope of the present litigation." *Terry v. Hoovestol, Inc.*, No. 16-CV-05183-JST, 2018 WL 4283420, at *5 (N.D. Cal. Sept. 7, 2018) (quoting *Otey v.*

---

[4] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

[5] Based on Plaintiff's motion, the Court does not foresee obstacles to preliminarily certifying the class for settlement purposes only.  But the Court will defer ruling on preliminary class certification until the parties have corrected the deficiencies in the Settlement.

7

*CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at *7 (N.D. Cal. Apr. 15, 2014)). Similarly, "[c]ourts in this district routinely reject proposed class action settlement agreements that try to release all claims in a wage-and-hour case relating to compensation as overbroad and improper." *Id.* (quoting *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) (citing cases)). The Court likewise finds that the release of FLSA claims that have never been a part of this litigation is overbroad and improper, precluding preliminary approval. *See Stokes v. Interline Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) ("The complaint says nothing at all about FLSA claims and yet the release purports to give away class members' rights under the statute. That is wholly unacceptable.").

The Court also notes that a number of district courts within this circuit have rejected attempts by plaintiffs moving for approval of a Rule 23 settlement to amend their complaints to add previously un-litigated FLSA claims. *See, e.g.*, *Maciel v. Bar 20 Dairy, LLC*, No. 117CV00902DADSKO, 2018 WL 5291969, at *6 (E.D. Cal. Oct. 23, 2018); *Gonzalez v. CoreCivic Tenn., LLC*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *4-5 (E.D. Cal. Sept. 13, 2018) ("In the court's view, this approach raises red flags in large part because it appears plaintiff agreed to settle the FLSA claim before he even considering litigating it."); *Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG, 2017 WL 697895, at *7-8 (S.D. Cal. Feb. 22, 2017). Should Plaintiff seek to amend his complaint to add an FLSA claim for settlement purposes, Plaintiff should be prepared to explain why those cases are wrongly decided or distinguishable.

Second, even assuming that the FLSA claims were properly included in the Settlement, Plaintiff's motion and supporting declaration do not inform the Court what potential FLSA claims might be subject to the release, let alone discuss the value of such claims. *Cf.* ECF No. 73 at 17 (describing risk-adjusted calculations for rest break and meal break violations only, and a separate maximum exposure calculation for the PAGA claim). The only reasonable inference the Court can draw is that the Settlement assigns those claims no value. A proposed settlement calling "for a release of the FLSA claim in exchange for no consideration does not appear to be a fair and

reasonable resolution of a bona fide dispute over FLSA provisions." *Maciel*, 2018 WL 5291969, at *6 (internal quotation marks omitted) (citing 29 U.S.C. § 216(b)); *see also Thompson*, 2017 WL 697895, at *8 ("[T]he fact that the settlement calls for a release of an FLSA claim in exchange for no consideration is problematic."). Rather, "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *Thompson*, 2017 WL 697895, at *8 (collecting cases); *see also Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015) (noting that "creation of separate settlement funds for the FLSA class and the Rule 23 class . . . would better protect absent class members"). Courts in this district have generally concluded that between 70 percent and 100 percent of a plaintiff's FLSA damages constitutes a reasonable settlement. *Slavkov v. Fast Water Heater Partners I, LP*, Case No. 14-cv-04324-JST, 2017 WL 3834873, at *1 (N.D. Cal. Jul. 25, 2017) (collecting cases).[6]

Third, even assuming that the Settlement provided adequate value for released FLSA claims, Plaintiff has not addressed the Court's authority to approve a settlement that releases FLSA claims en masse without first certifying a collective action. Rule 23 class actions are "fundamentally different from collective actions under the FLSA." *Thompson*, 2017 WL 697895 at *3 (quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013)). Some courts have therefore rejected settlements that attempted to skip collective action certification. *See id.* at *7 (finding problematic the lack of collective certification where the Settlement "clearly contemplates the existence of a collective action insofar as the agreement and notice to the class specify that by cashing their settlement checks, class members will have opted in to the FLSA claim"); *Sharobiem v. CVS Pharmacy, Inc.*, No. CV139426GHKFFMX, 2015 WL 10791914, at *2 (C.D. Cal. Sept. 2, 2015) (requiring plaintiffs in hybrid Rule 23/FLSA settlement to "move for preliminary certification of both a class and collective action properly supported by the relevant declarations and an analysis of the factors we must consider in certifying both").

Finally, even were the Court to preliminarily certify a collective action, Plaintiff would

---

[6] Under the FLSA, "[d]ouble damages are the norm; single damages are the exception." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014).

have to address how the Settlement's procedures comply with the FLSA's requirement that "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Under Plaintiff's proposal, class members would agree to release any FLSA claims by signing and cashing a settlement check. ECF No. 74-1 at 46 ("[T]he Release shall not include the release of claims under the FLSA unless you actually cash your Individual Settlement Payment."). Many courts, having consulted § 216(b)'s requirements, have rejected this opt-in by settlement check proposal. *See, e.g.*, *Smothers v. NorthStar Alarm Services, LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *11 (E.D. Cal. Jan. 22, 2019); *Kempen*, 2016 WL 4073336, at *9 ("The parties provide no support for their assertion that having class members sign, then cash, checks with purported opt-in language printed on the back . . . complies with the plain-language requirements of § 216(b)."); *Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-05013-LHK, 2016 WL 8729941, at *1 (N.D. Cal. Aug. 12, 2016) (finding settlement provision allowing FLSA members to opt-in by cashing or depositing settlement checks "does not comply with the plain language of the FLSA" and constitutes an obvious deficiency that precludes preliminary approval of Rule 23 and FLSA settlement). At least one court has also "question[ed] the legality" of requiring individuals to opt in to an FLSA collective action in order to obtain their share of recovery on non-FLSA claims. *Sharobiem*, 2015 WL 10791914, at *3.

In short, the parties face a formidable series of obstacles to justifying the release of FLSA claims in the Settlement. Because Plaintiff's motion does not discuss these additional issues, the Court expresses no conclusive opinion on them. But the Court expects that any renewed motion, if it includes such a release, will thoroughly address the concerns raised by these other courts.

### 2. Release of Claims Against United Airlines

The Court notes an additional concern with the scope of the Settlement's release provision. Although United Airlines was originally a Defendant in this action, Plaintiff voluntarily dismissed United without prejudice. ECF No. 51. United is not a party either to this action or to the Settlement. The Settlement's release provision, however, applies equally to claims against United Airlines. ECF No. 74-1 at 20.

1  The Court requires further explanation as to the propriety of requiring class members to
2  release claims against a non-party such as United Airlines.

### 3. Range of Recovery

This Court "has more than once denied motions for approval where the plaintiffs 'provide[d] no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'" *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018) (alteration in original) (quoting *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013)). This is because "any fraction has a denominator, and without knowing what it is the Court cannot balance plaintiffs' expected recovery against the proposed settlement amount." *Id.* (citation omitted)).

Here, Plaintiff provides minimal information as to the value of the class's claims. According to Plaintiff, a reasonably estimated exposure for rest break violations is $720,000. ECF No. 73 at 17. Plaintiff estimates that he faced a 33 percent likelihood of class certification and a 50 percent chance of proving liability, making the risk-adjusted value of the rest break claim $118,000. *Id.* According to Plaintiff, the risk-adjusted exposure for his meal break claim is $144,000. *Id.* The Court deduces that Plaintiff similarly considers the maximum value of the meal break claim to be $720,000, based on the risk adjustments set forth in Plaintiff's motion. Further, Plaintiff asserts, the total value of all claims is $5,500,000, which should be reduced to $800,000-1,000,000 due to those same risk factors. *Id.* Finally, Plaintiff states that "[t]he maximum PAGA exposure is separately calculated as potentially reaching $2,500,000." *Id.* Plaintiff provides no information as to the basis for these numbers. *See also* ECF No. 74 ¶ 18 (repeating same numbers with no additional information).

Plaintiff's submission does not provide the Court with sufficient information to evaluate the reasonableness of the class's recovery. For the rest break and meal break claims, Plaintiff simply states that the maximum value of each is $720,000, with no explanation as to how he reached that number. ECF No. 73 at 17. As a result, the Court cannot assess whether these estimates have any basis in fact. Balancing the class's potential recovery against the amount

11

offered in settlement is "perhaps the most important factor to consider" in preliminary approval, *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016), not a hollow exercise in which the Court blindly accepts the parties' unsupported assertions. As another court aptly put it: "Plaintiffs seeking preliminary approval should show their work by explaining the relative value of their claims in significant detail. For example, in a wage-and-hour case like this one, plaintiffs should show or estimate how many employees were allegedly shortchanged, calculate and explain to the Court the amount by which typical employees were allegedly shortchanged on an hourly or daily basis, and show or estimate the number of hours or days the employees were allegedly shortchanged." *Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016). The implicit assumption that Plaintiff's remaining claims are worth $4,060,000 likewise lacks any supporting detail.

Similarly, Plaintiff has failed to supply "enough information to evaluate the strengths and weaknesses of [his] case." *Eddings*, 2016 WL 3390477, at *1. Instead, Plaintiff provides generic statements of various risks inherent to class action, namely, that the Court might deny class certification as to one or more claims or that Plaintiff might fail to prove a claim at trial. ECF No. 73 at 16. Courts, including this one, have required more. *See K.H.*, 2018 WL 3585142, at *5 (denying preliminary approval of FLSA settlement where "[p]laintiffs have not even attempted to provide 'hypothetical scenarios,' that could produce various expected recoverable damages to measure against the proposed settlement amount" (quoting *Stovall-Gusman v. W.W. Grainger, Inc.*, No. 13-CV-02540-JD, 2014 WL 5492729, at *2 (N.D. Cal. Oct. 30, 2014)); *Hunt v. VEP Healthcare, Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) ("The motion for preliminary approval makes abstract gestures to the uncertainties of litigation, rather than offering a careful analysis of the claims and the strength or weakness of any potential defenses."); *Eddings*, 2016 WL 3390477, at *1 ("The plaintiffs list legal issues that this case might present and positions that the defendants might take, but they don't analyze those issues or evaluate the strength or weakness of defendants' positions. A party moving for preliminary approval should cite case law and apply it to explain why each claim or defense in the case is more or less likely to prove meritorious.").

1  In sum, any future motion should explain the basis for calculating the maximum value of
2  Plaintiff's claims and articulate particularized reasons why the proposed discount is appropriate.

### 4.    PAGA Penalties

The Court also requires additional information supporting the settlement of Plaintiff's representative PAGA claim.

"A PAGA representative action is . . . a type of qui tam action" in which a private plaintiff pursues "a dispute between an employer and the state Labor and Workforce Development Agency" ("LWDA") on behalf of the state. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382, 384 (2014). Accordingly, there are "'fundamental[ ]' differences between PAGA actions and class actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014)). For one, class certification is not required to pursue a PAGA representative claim. *See Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009).

"[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," however, the Act also requires that a court "review and approve any settlement of any civil action filed pursuant to [the Act]." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (second quoting Cal. Lab. Code § 2699(l)(2)). Moreover, "[a] party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the [LWDA] to allow the LWDA to comment on the settlement if the LWDA so desires." *Id.*; *see also* Cal. Lab. Code § 2699(l)(2) ("The proposed settlement shall be submitted to the [LWDA] at the same time that it is submitted to the court."). But "'neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. EDCV161701JVSSPX, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)). In commenting on a proposed PAGA settlement, the LWDA has offered only this guidance:

> It is thus important that when a PAGA claim is settled, the relief

> provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting LWDA Response).[7] In line with these general principles, a number of district courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is "fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Jordan*, 2018 WL 1409590, at *2 (collecting cases); *see also Ramirez*, 2017 WL 3670794, at *3; *O'Connor*, 201 F. Supp. 3d at 1134.

Where PAGA claims are settled in the same agreement with the underlying Labor Code claims, courts have also looked to the interplay of the two recoveries to determine whether PAGA's purposes have been served. The *O'Connor* court, for instance, adopted a "sliding scale," noting that "[b]y providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." 201 F. Supp. 3d at 1134. Similarly, "if the settlement resolves the important question of the status of workers as employees entitled to the protection of the Labor Code or contained substantial injunctive relief, this would support PAGA's interest in augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id.* at 1134-35 (internal quotation marks and citation omitted). In other words, where the settlement of Labor Code claims under Rule 23 provides "robust" relief to the class, it supports a greater reduction in PAGA penalties. *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016).

At the same time, the *O'Connor* court identified countervailing considerations suggesting that courts should scrutinize even more closely the settlement of PAGA claims. Critically,

---

[7] The California Supreme Court has noted in passing only that "PAGA settlements are subject to trial court review and approval, ensuring that any negotiated resolution is fair to those affected." *Williams v. Superior Court*, 3 Cal. 5th 531, 549 (2017) (citing Cal. Lab. Code § 2699(l)(2)).

14

"[w]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment" despite the absence of the protections afforded by "class action procedures, such as notice and opt-out rights." *O'Connor*, 201 F. Supp. 3d at 1134 (citing *Iskanian*, 59 Cal. 4th at 381). A court must therefore be mindful of the "temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class." *Id.*

Here, the Settlement allocates $25,000 to the PAGA claims. ECF No. 74-1 at 17. This represents one percent of the asserted maximum of $2,500,000 value of those claims. *See* ECF No. 73 at 17. As explained above, Plaintiff has provided no supporting detail for this calculation. Because Plaintiff has not demonstrated to any reasonable degree of certainty the denominator involved, the Court cannot yet draw definitive conclusions on whether the fractional recovery of the PAGA settlement is reasonable. The Court nonetheless offers some preliminary observations.

"In this district, courts have raised concerns about settlements of less than 1% of the total value of a PAGA claim." *Jennings v. Open Door Mktg.*, LLC, No. 15-CV-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (citing *Viceral*, 2016 WL 5907869, at *9); *see also Cotter*, 176 F. Supp. 3d at 940 (finding problematic, among other things, the "seemingly arbitrary reduction of [the PAGA] penalty to a miniscule portion of the settlement amount – $122,250, which is less than one percent of the total"); *cf. McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding $50,000 PAGA allocation for claims estimated at $4.7 million – approximately 1.1 percent – adequate). At least one court, however, has approved an approximately 0.2 percent PAGA recovery. *See Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 5462451, at *2, 7 (N.D. Cal. Sept. 28, 2016) (settlement allocating $10,000 to PAGA penalties where potential value was over $5.2 million). Some other courts have looked instead to the proportion of the PAGA settlement to the overall settlement recovery. *See Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *10 (N.D. Cal. Aug. 25, 2017) (granting final approval of $5,000 PAGA penalty

1  from $370,000 settlement, or 1.4 percent); *Slavkov*, 2017 WL 3834873, at *2 (finding that "$7,500

2  PAGA payment is reasonable when measured against the total overall settlement [of $345,000]

3  and the possible weaknesses in Plaintiffs' case," or 2.2 percent).[8]

4        In approving PAGA settlements accounting for less than one percent of the claims' value,

5  courts have identified a number of factors that might support a lesser recovery. First, courts have

6  taken into account LWDA's views, or lack thereof, on the settlement. *See Jennings*, 2018 WL

7  4773057, at *9 (approving 0.6 percent settlement where "[p]laintiffs [have] submitted the

8  settlement agreement to the LWDA, and the LWDA has not objected to the settlement"); *Jordan*,

9  2018 WL 1409590, at *3 ("Additionally, the Court finds it persuasive that the LWDA was

10  permitted to file a response to the proposed settlement and no comment or objection has been

11  received."); *O'Connor*, 201 F. Supp. 3d at 1135 ("Plaintiffs propose settling PAGA for only 0.1%

12  of the potential verdict value, a reduction that the LWDA has found has no rational basis."). Here,

13  Plaintiff's counsel declares that Plaintiff provided notice through LWDA's online submission

14  portal on January 8, 2019. ECF No. 74 ¶ 42. The Court has received no response from LWDA.

15        Second, courts have considered whether they would be likely to exercise their discretion

16  under California Labor Code § 2699(e)(2) to reduce the amount of PAGA penalties,[9] were those

17  claims to be litigated through judgment. *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D.

18  Cal. 2016) (concluding that "[a] significant reduction would be appropriate" because it was "not a

19  case where a company has deliberately evaded a clear legal obligation to provide legally required

20  pay and benefits to its employees" or "negligently failed to learn about its obligations under the

21  wage and hour laws"); *cf. Berstein v. Virgin America, Inc.*, No. 15-cv-02277-JST (N.D. Cal.), ECF

---

[8] Other cases that did not separately discuss the reasonable of the PAGA portion of the settlement involved similar ratios of PAGA recovery to overall settlement amount. *See Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 3442774, at *1 (N.D. Cal. June 23, 2016) (granting preliminary approval to $500,000 settlement that allocated $5,000, or 1 percent, to PAGA claims); *Saechao v. Landrys*, Inc., No. C 15-00815 WHA, 2016 WL 3227180, at *2 (N.D. Cal. June 11, 2016) (preliminarily approving $500,00 settlement that allocated $12,000, or 2.4 percent, to PAGA claims).

[9] Section 2699(e)(2) provides that "a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

No. 365 at 14-15 (reducing PAGA penalties by 25 percent where "no court had previously resolved the issues" of liability, noting that "when the law is unclear, awarding the maximum [PAGA] penalties may be excessively punitive and their deterrence function weakened"). In this case, the parties have identified no novel issues as to the scope of USAS's obligations under the California Labor Code. Rather, Plaintiff primarily alleges that USAS simply failed to provide legally required pay and benefits to its employees. Nor has Plaintiff otherwise argued that a reduction in PAGA penalties would be appropriate.

Third, courts have considered whether the settlement provides additional non-monetary relief. *Cf. O'Connor*, 201 F. Supp. 3d at 1135 (finding that this factor did not favor approval because "the non-monetary relief is of limited benefit to the class"). The Settlement here does not provide non-monetary relief, let alone significant relief that would offset a lower monetary recovery on the PAGA claims.

Finally, some courts have concluded that a lower PAGA settlement is permissible where the Rule 23 settlement is "relatively substantial" based on the circumstances of the case. *Viceral*, 2016 WL 5907869, at *9 (approving 0.15% percent recovery). Plaintiff relies exclusively on this factor, asserting that "the settlement of the underlying wage and hour claims is robust and that serves the deterrent purpose of the PAGA statute." ECF No. 73 at 19 (citing *O'Connor*, 201 F. Supp. 3d at 1135). Because Plaintiff has not provided sufficient detail regarding the range of recovery on the Rule 23 claims, the Court cannot conclude that the size of the class's recovery justifies a lower PAGA allocation.

In sum, the Settlement's allocated PAGA recovery of one percent is on the border of percentages that raise heightened concerns. The Court defers resolution of its adequacy pending further information from the parties regarding the maximum value and reasons for discounted recovery of both the Rule 23 and PAGA claims.

### 5. Other Deficiencies

In addition to the above problems, there are a number of other omissions or deficiencies that should be addressed in any future motion for preliminary approval.

First, the parties should comply with this district's *Procedural Guidance for Class Action*

17

*Settlements*, which instructs that "[t]he motion for preliminary approval should state," among other things, "any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case." Northern District of California, *Procedural Guidance for Class Action Settlements* § 1(a) ("Northern District Guidance"), https://www.cand.uscourts.gov/ClassActionSettlementGuidance. Here, Plaintiff originally sought certification of numerous subclasses for individual claims, TAC ¶ 10; ECF No. 62 at 11, but now seeks to certify a single class for settlement purposes, ECF No. 73 at 5. Plaintiff has also narrowed the class definition from "all persons employed . . . in hourly paid or non-exempt positions," TAC ¶ 10, to "all current and former non-exempt *airplane cabin cleaners*," ECF No. 73 at 5 (emphasis added).

Second, the parties should provide "an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples." Northern District Guidance § 1(g).

Third, in addition to the proposed Settlement Administrator, "the parties should identify . . . the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years." *Id.* § 2.[10]

Fourth, Plaintiff states that counsel "will provide the Court with information for the purposes of calculating attorney's fees under the lodestar method should the Court so desire for ruling on Plaintiff's fee application at the final fairness hearing." ECF No. 73 at 20. The Northern District Guidance instructs class counsel to "include information about . . . their lodestar

---

[10] The Court also notes that while Plaintiff's motion requests approval of ILYM Group as the Settlement Administrator, ECF No. 73 at 5, the Settlement itself names CPT Group, Inc. as the Settlement Administrator, ECF No. 74-1 at 9, 15. The Court invites the parties to clarify this inconsistency in a future motion.

1    calculation in the motion for preliminary approval." Northern District Guidance § 6.  This

2    information "should include the total number of hours billed to date and the requested multiplier,

3    if any."  *Id.*[11]

4    Fifth, "[t]he parties should address whether [Class Action Fairness Act of 2005 ("CAFA")]

5    notice is required and, if so, when it will be given." Northern District Guidance § 10; *see also* 28

6    U.S.C. § 1715(b).  The parties have not addressed CAFA notice.

### 6. Notice Plan

Finally, the Court notes several defects with the proposed notice plan.

First and foremost, the notice plan does not provide a free means for class members to access the Settlement and related documents.  *See* Northern District Guidance § 3 ("[T]he notice should include . . . the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, motions for approval and for attorneys' fees and any other important documents in the case.").  As it stands, class members will only be able to find this information by viewing the case file in person at the courthouse in San Francisco, California, or accessing the docket through PACER, which at the moment charges fees for access.  ECF No. 74-1 at 42-43, 48.  Class members should not have to travel to the Court or pay a fee to review the information necessary to make an informed choice as to whether to opt out of the class, absent some compelling explanation from Plaintiff why that is necessary in this case.

Second, for a class member to request exclusion from the Settlement, the only information the class member must provide in a letter to the Settlement Administrator is (1) the class member's name, (2) a statement that the class member wishes to be excluded from the settlement

---

[11] Neither Plaintiff's counsel's motion for fees nor the request for a service award to Haralson is currently before the Court.  The Court observes, however, that both requests exceed their respective benchmark amounts.  *See Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018) ("For more than two decades, the Ninth Circuit has set the 'benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.'" (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (noting that $7,500 service awards "exceed typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable").  Accordingly, the Court expects that Plaintiff's motion for attorneys' fees and a service award will provide appropriate detail and documentation supporting these requests.

class in *Haralson v. U.S. Aviation Servs. Corp.*, Case No. 3:16-cv-05207-JST, and (3) the class member's signature. Information regarding class members' telephone numbers, addresses, and Social Security numbers, is not required, contrary to what is currently indicated in the Proposed Notice. *See* ECF No. 74-1 at 47.

Finally, the Proposed Notice "should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement." Northern District Guidance § 5. The Court invites the parties to consider this district's suggested language. *See id.*

## V. CONCLUSION

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE the motion for preliminary settlement approval. The Court defers ruling on preliminary class certification until the parties present a settlement that merits preliminary approval.

The Court sets a further case management conference on July 17, 2019 at 2:00 p.m. An updated joint case management statement is due July 10, 2019. The Court will vacate the July 17, 2019, hearing if a renewed motion for preliminary approval has been filed on or before July 9, 2019.

**IT IS SO ORDERED.**

Dated:  June 7, 2019


JON S. TIGAR
United States District Judge